422 So.2d 435 (1982)
Edward R. ROZELL
v.
LOUISIANA ANIMAL BREEDERS COOPERATIVE, INC., et al.
No. 14927.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
On Rehearing December 16, 1982.
Writ Granted February 4, 1983.
R. Bruce Macmurdo, Baton Rouge, for plaintiff-appellant Edward R. Rozell.
Warren L. Mengis, Baton Rouge, for defendant-appellee Louisiana Animal Breeders Co-op.
James E. Moore, Baton Rouge, for defendant-appellee Atlantic Breeders Co-op.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
Plaintiff, Edward R. Rozell, instituted this strict liability action, seeking damages for personal injuries which he sustained as a result of being attacked by a bull. Named as defendants were the alleged owners of the bull, Louisiana Animal Breeders Cooperative, Inc. (LABC), North Ohio Breeders Cooperative, Inc. (NOBC), and Atlantic Breeders Cooperative (ABC). On plaintiff's motion, NOBC was dismissed from the case. LABC answered, denying generally the allegations of plaintiff's petition and further alleging that the bull was in the custody of Louisiana State University (LSU) at the time of the attack.
Subsequently, the remaining defendants, LABC and ABC, filed motions for summary judgment, each alleging that it did not have custody of the bull at the time of the attack and, therefore, that each was entitled to judgment as a matter of law. The trial court rendered judgment on August 21, 1981, granting defendants' motions and dismissing plaintiff's suit. Judgment was signed in favor of ABC on the same day as rendition and in favor of LABC on August 24, 1981. Plaintiff was then granted the instant appeal from both judgments on September 3, 1981. We reverse the action of the trial court in dismissing LABC as a party defendant, but affirm the trial court in dismissing ABC as a defendant, with prejudice.
*436 At the time he was injured, plaintiff was employed by LSU at its Dairy Improvement Center. His duties primarily consisted of feeding and otherwise tending to the bulls kept there for breeding purposes. In the course of those duties, plaintiff and other LSU employees would have to enter the facility where the bull was housed in order to open or close the gate which allowed the bull access to a fenced area. Plaintiff stated in his deposition that he was never instructed not to enter the housing facility without the bull being restrained or without the aid of another employee. On the other hand, Dr. Arnold Baham, manager of the LSU Dairy Improvement Center, as well as manager of LABC, testified by deposition that plaintiff was instructed on such procedures.
The Dairy Improvement Center was created by the legislature to provide to the state's farmers, at minimum cost, a medium for artificial insemination of their cattle. In the performance of this service, the Dairy Improvement Center maintains privately owned bulls on land owned by LSU for purposes of collection, storage, and delivery of semen. Several of the bulls maintained by LSU are owned by breeding cooperatives, among which are LABC and ABC. Although the bulls continue to be privatelyowned, they are tended to exclusively by LSU employees while they remain at the Dairy Improvement Center. The particular bull which caused plaintiff's injuries in the instant case, named Dixie Lee Fashion Designer, was owned two-thirds by ABC and one-third by LABC.
While no employees of LABC or ABC tended to the everyday needs of the bulls, LABC and the Dairy Improvement Center have a somewhat intertwined relationship. As we noted earlier, the manager of LABC and the manager of the Dairy Improvement Center are the same person. Dr. Baham indicated that it was a requirement of his employment with LSU that he also manage LABC. Additionally, Dr. Baham testified that LABC's main office was maintained in the same place as the Dairy Improvement Center's office. Dr. Baham did state that LABC had a separate accounting office, but it was also in the same LSU building. Dr. Baham also testified that, while the persons who tend to the bulls were LSU employees, they performed overlapping duties in that they collect semen for LABC.
Two articles of the Civil Code must be considered to determine the nature and extent of liability on the part of the owners or custodians of domesticated animals for injuries or damages inflicted by those animals, LSA-C.C. art. 2317 and 2321:
2317.
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
2321.
"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
In the leading case on strict liability for damages inflicted by a domesticated animal, Holland v. Buckley, 305 So.2d 113 (La. 1974), the Louisiana Supreme Court held the owner of a dog liable for a bite inflicted upon plaintiff by the dog, reasoning as follows:
"The issue before us is: When an innocent bystander is bitten by a dog, who shall bear the damages so caused? The bystander passing on the street, who did not provoke the attack? Or the owner of the dog who created the risk by letting the dog go loose?"
(at p. 114)
It further said:
"We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal *437 harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
....
"The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure.
"Article 2321 places the master of the animal under a legal obligation to keep his animal under such guard that it does no damage to others. A fault in this obligation to control the animal and guard others from harm by it entitles the victim to recover damages thereby sustained."
(at p. 119)
It will be noted that the Louisiana Supreme Court did not consider the problem that would arise if the owner and the custodian of the animal were different persons, the owner and custodian of the dog that had inflicted the bite in Holland having been the same person.
The question arising when there is a separation between ownership and custody of an animal was first presented in recent years in Fontenot v. Soileau, 336 So.2d 1006 (La.App. 3d Cir.1976). In that case, a boy employed to exercise race horses was thrown from the horse he was riding when the horse "lugged in". The Third Circuit held that the animal was not in the custody of the owner, but in fact was under the care, custody and control of the injured party. The Court refused to find strict liability on the part of the horse's owner.
This Circuit was presented with a similar factual situation in Alfonso v. Market Facilities of Houston, Incorporated, 356 So.2d 86 (La.App. 1st Cir.1978, writ denied 357 So.2d 1169 (La.1978). In that case two women were thrown from two horses which they were riding but which defendant owned when the horses shied upon hearing a clap of thunder. We refused to find strict liability on the part of the horse's owner, stating as follows:
"From the foregoing, we gather that, in order to hold the owner of an animal strictly liable for damage to another done by the animal, there must be a domestic animal, which is actually or constructively under the control of the owner, or which he has an obligation to restrain, the presence of which causes an unreasonable risk of harm to others and which injures an innocent third party."
(at p. 89)
This court used identical language in refusing to find strict liability on the part of the owner of a calf in Brooks v. United States Fidelity and Guaranty Company, 358 So.2d 660 (La.App. 1st Cir.1978). In that case the daughter-in-law, of the owner of a calf which the daughter-in-law had been feeding, was nudged on the leg by the calf, which caused her to fall. We held the daughter-in-law in fact had care, custody, and control of the calf, not the owner, and, hence, there could not be recovery under strict liability.
In the present case, it is clear that the bull which attacked plaintiff was not under the care, custody, or control of ABC, which merely owned an undivided twothirds interest in the bull. On the other hand, because Dr. Baham was both manager of the LSU Dairy Improvement Center and manager of LABC, and received some remuneration from each, and because the lower management of the Dairy Improvement Center and LABC was to a certain extent interlocking, we find that sufficient question of care, custody, and control of the bull on the part of LABC exists to leave open genuine issues of material fact touching upon ultimate liability and to require us to set aside the summary judgment granted in favor of LABC. LSA-C.C.P. art. 966. However, the bull was clearly not under the care, custody or control of ABC. As the *438 owner lacking care, custody or control is not held to strict liability, summary judgment was properly granted in favor of ABC.
The judgment of the trial court in granting summary judgment in favor of ABC is affirmed. The judgment of the trial court granting summary judgment in favor of LABC is reversed, and the case remanded for further proceedings. No costs shall be paid by ABC. Awarding of costs as between plaintiff and LABC shall await final determination of the matter.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

ON REHEARING
COVINGTON, Judge.
We granted this rehearing to reconsider the question of whether our original opinion was correct in reversing the summary judgment in favor of Louisiana Animal Breeders Cooperative, Inc. (LABC). We originally affirmed the summary judgment in favor of Atlantic Breeders Cooperative (ABC) based on our finding that the bull, Dixie Lee Fashion Designer, which attacked plaintiff was not under the care, custody, or control of ABC. We adhere to that conclusion. In our original opinion, we reversed the judgment of the trial court granting summary judgment in favor of LABC, and remanded the case for further proceedings.
On reconsideration, we believe that we erred in concluding that because Dr. Arnold Baham was both an employee of the LSU Dairy Improvement Center and an employee of LABC, with certain interlocking managements of the two entities, there was a sufficient question of care, custody, and control of the bull to leave open genuine issues of material fact touching upon ultimate liability.
We now find that the depositions and affidavits in the record show that there is no genuine issue of material fact. It is clear that the Dairy Improvement Center, not the owners (ABC and LABC) had sole care, custody and control of Dixie Lee Fashion Designer, even including the right to sell the bull without directive from the owners. This bull was placed in the custody of the Dairy Improvement Center and under the supervision of the Center for the purpose of promoting breeding in the State of Louisiana. Neither of the two owners had any supervision, care or control of the bull. The record does not support our earlier finding of interlocking managements of the Dairy Improvement Center and LABC; they are clearly two separate entities. The mere fact that Dr. Baham was manager of LABC and an employee of Louisiana State University in no way refutes the positive statements in the record that LABC exercised no care, custody or control over the bull in question. The cases of Alfonso v. Market Facilities of Houston, Incorporated, 356 So.2d 86 (La.App. 1st Cir.1978), writ denied 357 So.2d 1169 (La.1978), and Brooks v. United States Fidelity and Guaranty Company, 358 So.2d 660 (La.App. 1st Cir. 1978), support our conclusion on rehearing that LABC, as an owner who does not have care, custody or control of the animal, is not held to strict liability pursuant to LSA-C.C. arts. 2317, 2321. The summary judgment was properly granted.
Accordingly, we reverse our original opinion as to LABC and affirm the judgment of the district court granting the defendants' motions for summary judgment at appellant's costs.
ORIGINAL OPINION REVERSED IN PART; JUDGMENT OF DISTRICT COURT AFFIRMED.
WATKINS, J., dissents and assigns reasons.
WATKINS, Judge (dissenting).
I dissent, being of the view that the depositions and affidavits before the court on motion for summary judgment clearly establish interlocking management and control on the part of Louisiana Animal Breeders Cooperative, Inc., and Louisiana State University with respect to the bull that attacked plaintiff.
I, therefore, respectfully dissent.